UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:18-cv-00269-FDW

| | |
|---|---|
| VIVIAN C. MITCHELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment filed on February 28, 2019, (Doc. No. 10), and Commissioner's Motion for Summary Judgment filed on April 26, 2019. (Doc. No. 12). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits, asking the Court to reverse the decision, or in the alternative a remand for a new administrative hearing.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED; the Commissioner's Motion for Summary Judgment is GRANTED; and the Commissioner's decision is AFFIRMED.

**I. BACKGROUND**

Plaintiff filed a Title II application for disability benefits on September 14, 2014, alleging disability began July 16, 2014. (Tr. 13). The claim was initially denied on February 12, 2015, (Tr. 82), and then denied upon reconsideration on August 20, 2015. (Tr. 105). Plaintiff filed a request for a hearing on October 15, 2015. (Tr. 110). A video hearing was held on April 20, 2017

and the Administrative Law Judge ("ALJ") issued an unfavorable decision on September 13, 2017. (Tr. 13). Plaintiff's request for review by an appeals council was denied on July 20, 2018. (Tr. 1).

The ALJ determined Plaintiff met the insured status requirements of the Social Security Act and had not engaged in substantial gainful activity since the alleged onset date of July 16, 2014. (Tr. 15). The ALJ then found Plaintiff has the following severe impairments: (1) seizure episodes; (2) respiratory failure; and (3) affective disorder. (Tr. 15). The ALJ established Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16). The ALJ found Plaintiff has the residual functional capacity ("RFC"):

> to perform medium work as defined in 20 CFR 404.1567(c) except she can only occasionally climb ramps and stairs and can never climb ladders, ropes, or scaffolds. The claimant can frequently handle and finger with her bilateral upper extremities, she can have occasional exposure to environmental irritants such as fumes, odors, dust, and gases, and she cannot use moving machinery or be exposed to unprotected heights. Additionally, the claimant is limited to performing simple, routine, repetitive tasks; which she can perform for two-hour blocks of time, with normal rest breaks, during an eight-hour workday; and she can handle only occasional workplace changes.

(Tr. 17-18). The vocational expert ("VE") testified Plaintiff would be unable to perform Plaintiff's past work as a floral arranger, DOT No. 142.081-010, (Tr. 23). Responding to the ALJ's hypothetical that factored in Plaintiff's age, education, work experience and RFC, the VE testified there are jobs that exist in significant numbers in the national economy that an individual with Plaintiff's limitations could perform. (Tr. 23). The ALJ subsequently concluded Plaintiff is not disabled under the Social Security Act. (Tr. 24). Following denial of Plaintiff's request for review by an appeals council, Plaintiff filed a Complaint in this Court, invoking jurisdiction under 42

U.S.C. § 405(g). (Doc. No. 1, p. 1).

## II. STANDARD OF REVIEW

"In order to establish entitlement to [disability] benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g) (2012)). The evidence is evaluated by an ALJ under a "five-step sequential process" that "ALJs must use in making disability determinations." Id. As summarized in Mascio v. Colvin, the process is:

> the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

780 F.3d 632, 634 (4th Cir. 2015). The claimant bears the burden of "making the requisite showing" at steps one and two, and if she fails to carry that burden, then "[she] is determined not to be disabled." Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). The burden remains with the claimant at step three, and "[she] can establish [her] disability if [she] shows that [her] impairments match a listed impairment." Id.; Mascio, 780 F.3d at 634-35. "[I]f the claimant fails at [this] step, the ALJ then must determine the claimant's *residual functional capacity* (RFC), Monroe, 826 F.3d at 179, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." Mascio, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)(1)) (emphasis added); see infra p. 5.

3

After determining the claimant's RFC, the ALJ proceeds to step four "where the burden rests with the claimant to show that [she] is not able to perform [her] past work." Monroe, 826 F.3d at 180. If successful, she proceeds to step five where "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's [RFC], age, education, and work experience." Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). Typically, the Commissioner offers evidence "through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id. "If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits." Id.

Judicial review of a Commissioner's decision to deny social security benefits is authorized by 42 U.S.C. § 405(g), and a reviewing court "must uphold the factual findings of the [Commissioner] if [(1)] they are supported by substantial evidence and [(2)] were reached through application of the correct legal standard." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229) (internal quotation marks omitted); consisting "of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966)) (internal quotation marks omitted). A reviewing Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner], Id.,

4

and '[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner].'" Id. (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir.1987)).

Therefore, the Court is limited to deciding "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of [legal standards]." Id. In short, Plaintiff argues the ALJ's conclusion that Plaintiff is not disabled is not supported by substantial evidence and not based on correct application of legal standards (Doc. No. 1, p. 2).

### III. ANALYSIS

Plaintiff claims the ALJ erred by: (1) incorrectly evaluating the symptoms of the Plaintiff as it compares to the evidence of record; and (2) formulating and applying the RFC (Doc. No. 10-1, p. 3).[1] Because the former informs the latter, this analysis begins with the ALJ's evaluation of Plaintiff's symptoms as it compares to the evidence of the record.

A reviewing court "must uphold the factual findings of the ALJ if [(1)] they are supported by substantial evidence and [(2)] were reached through application of the correct legal standard." Barnhart, 434 F.3d at 653 (quoting Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The

---

[1] Under the "Issues Presented" section of Plaintiff's Memorandum supporting its Motion for Summary Judgment, the Plaintiff states, "there are *three* critical errors committed by the ALJ the Plaintiff will focus on." (Doc. No. 10-1, p. 3) (emphasis added). However, immediately following this statement, Plaintiff only lists *two* issues:
  (1) The ALJ committed prejudicial error by incorrectly evaluating the symptoms of the Plaintiff as it compares to the evidence of record, violating the agency ruling in SSR 16-3p, and 20 CFR § 404.1529(c)(3) and 416.929(c)(3); and (2) The ALJ erred in the formulation and application of the RFC, both under agency and the ruling in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015).
(Doc. No. 10-1, p. 3). Furthermore, Plaintiff only provides arguments for these two issues, (see Doc. No. 10-1, p. 3-14), and does not appear to provide arguments for any another issue. Thus, if there were other issues Plaintiff sought to argue, it is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed *waived*," United States v. Layne, 192 F.3d 556, 566 (6th Cir. 1999) (emphasis added).

Supreme Court has described substantial evidence as "more than a mere scintilla," meaning only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229) (internal quotation marks omitted); see supra p. 4.

Plaintiff assigns error to the ALJ's evaluation of both acknowledged severe impairments and other impairments. (Doc. No. 10-1, p. 4). Severe impairments acknowledged in step two included (1) seizure episodes, (2) respiratory disorder, and (3) affective disorder. (Tr. 15). Other impairments not found to be severe included (1) fibromyalgia, (2) gastroesophageal reflux disease ("GERD"), and (3) non-alcoholic steatohepatitis ("NASH"). (Doc. No. 10-1, p. 4).

Starting with severe impairments, the ALJ cited Plaintiff's visit to a neurologist in October 2014 with respect to Plaintiff's seizure episodes in which the neurologist found, on examination, that Plaintiff was "cooperative, alert, and oriented and followed commands well, exhibiting normal concentration, recent memory and remote memory, as well as full strength in her upper and lower extremities, intact cranial nerves, sensation and coordination and no observable tremor." (Tr. 19). The ALJ also explained during the hearing, Plaintiff "reported to experience . . . episodes, which were not apparent to the undersigned, and which did not affect the course of her testimony." (Tr. 21). In addressing respiratory disorder, the ALJ cited evidence to suggest "pulmonary testing during the record was essentially normal, and the claimant received little treatment for her respiratory disorder throughout the course of the relevant period." (Tr. 21). For affective disorder, the ALJ observed, "[C]laimant admitted no problems relating to others" and "had no problems being in public, as she went to the grocery store, church and work without difficulty." (Tr. 19-20). Thus, considering substantial evidence means "more than a mere scintilla," this Court finds the

ALJ adequately evaluated Plaintiff's symptoms and functional limitations as compared to the evidence of the record with respect Plaintiff's severe impairments.

Regarding non-severe and other impairments, Plaintiff first challenges the ALJ's characterization of GERD and fibromyalgia as non-severe. In classifying fibromyalgia as non-severe, the ALJ explained "claimant was diagnosed with myalgia/myositis in May 2010, with no further treatment apparent through the relevant period, and she displayed full strength and normal gait throughout." (Tr. 15). For GERD, the ALJ stated, "GERD symptom control was good in March 2017, with good treatment tolerance." (Tr. 15). Assuming arguendo that conflicting evidence exists, this Court does not reweigh conflicting evidence when reviewing an ALJ's decision to uphold the denial of social security benefits. See supra p. 4. Therefore, the Court finds the ALJ adequately evaluated and explained Plaintiff's symptoms and functional limitations for classifying Plaintiff's GERD and fibromyalgia as non-severe impairments.

Plaintiff also challenges the ALJ's evaluation of non-severe and other alleged impairments generally. Absent from the ALJ's narrative of the RFC formulation is any direct discussion of fibromyalgia, GERD and NASH. The ALJ notes at step two there is evidence for diagnoses of fibromyalgia and GERD, (Tr. 15), and Plaintiff was formally diagnosed with NASH on September 16, 2015. (Tr. 459-463). Plaintiff alleged adverse symptoms resulting from these diseases, such as pain. (Tr. 38, 40, 55). However, Plaintiff failed to mention how any of these alleged diseases specifically affected her workplace function, and as previously mentioned, the burden of proof rests with Plaintiff during the first four steps of the analysis. See Mascio, 780 F.3d. at 634. Furthermore, despite failing to mention fibromyalgia, GERD and NASH in the narrative, the ALJ stated, "[t]he undersigned gives great weight to the opinion of State agency medical consultant

Ellen Huffman Zechman, M.D., who found the claimant capable of medium work . . . [which] is consistent with the claimant's full strength and normal gait throughout the period." (Tr. 21). Therefore, absent Plaintiff providing additional evidence as to how these diseases affect her workplace function, the Court finds the ALJ adequately evaluated the Plaintiff's symptoms and functional limitations as compared to the evidence of the record with respect to Plaintiff's non-severe impairments.

Plaintiff also assigns error to the ALJ's RFC formulation and application. The RFC "'assessment must first identify the [claimant's] functional limitations or restrictions and assess . . . her work-related abilities on a function-by-function basis, including the functions' listed in the regulations.'"[2] Mascio, 780 F.3d. at 636 (quoting SSR 96–8p, 1996 WL 362207 at *1). The ALJ "must 'consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." Id. (quoting 20 C.F.R. § 416.945(a)(2)). "Where the medical signs or laboratory findings show that [a claimant has] a medically determinable impairment or impairments that could reasonably be expected to produce [the claimant's] symptoms, such as pain, the ALJ must then evaluate the intensity and persistence of [the claimant's] symptoms so that the ALJ can determine how [the claimant's] symptoms limit [her] capacity for work." Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 255 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1529(c)(1)) (internal quotation marks omitted). The ALJ "must consider

---

[2] "The listed functions are the claimant's (1) physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching); (2) mental abilities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting; and (3) other work-related abilities affected by impairments such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." Mascio, 780 F.3d at 636, n. 5, (4th Cir. 2015) (quoting 20 C.F.R. § 416.945(b)-(d)) (internal quotation marks omitted).

all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Lewis v. Berryhill, 858 F.3d 858, 862 (4th Cir. 2017) (quoting 20 C.F.R. §§ 404.1529(a), 416.929(a)) (internal quotation marks omitted). As part of this analysis, the ALJ "assess[es] the credibility of the claimant's statements about symptoms and their functional effects." Id. at 866.

After completing the function-by-function analysis, an ALJ may express the RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p, 1996 WL 362207 at *1. Furthermore, the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. at *6.

As part of this assignment of error, Plaintiff alleges the "ALJ's analysis of all of Ms. Mitchell's impairments of record is 'inadequate' and therefore remand is warranted to address and explain both the RFC and the resulting hypothetical given to the vocational expert at Step Five." (Doc. No. 10-1, p. 13). As discussed in the ALJ's evaluation of Plaintiff's symptoms, the ALJ's cited evidence and explanations of his conclusions in the RFC narrative were sufficient for Plaintiff's impairments of (1) seizure episodes, (2) respiratory disorder, (3) affective disorder, (4) fibromyalgia, (5) GERD, and (6) NASH.

Plaintiff also claims the ALJ failed to account for Plaintiff's "mental limitations" in the RFC formulation. (Doc. No. 10-1, p.13). Plaintiff cites Mascio, in which the Court held, "we agree with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled

9

work." 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir.2011)). Mascio goes onto say:

> Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert.

780 F.3d at 638. Here, the ALJ found Plaintiff had "moderate limitation" with respect to "concentrating, persisting or maintain pace." (Tr. 17). However, in contrast to Mascio, the hypothetical the ALJ posed to the VE in this case is restricted beyond "simple, routine tasks" to account for Plaintiff's mental limitations as it reads "simple, routine tasks; *which she can perform in two-hour blocks at a time*." Furthermore, the ALJ explained he gave "partial weight to the opinions of the State agency psychological consultants, who found the claimant capable of understanding remembering and completing simple instructions and tasks," finding the consultants "gave proper consideration to the claimant's subjective allegations concerning memory and concentration difficulties, considering objective evidence." (Tr. 21-22). The ALJ also cited evidence suggesting, "memory, attention, concentration were essentially normal throughout the relevant period" and "the claimant's alleged concentration and memory deficiencies were barely apparent." (Tr. 21). Thus, the ALJ adequately accounted for Plaintiff's mental limitations in the RFC formulation.

Plaintiff further argues that the ALJ did not adequately "assess[] the extent to which Ms. Mitchell could perform the cited activities." (Doc. No. 10-1, p. 14). Plaintiff posits:

> The ALJ noted that Ms. Mitchell visited friends, attended church, ate out, went to movies, prepared meals, cleaned, did laundry, watered plants and went outside (R. 16-17). What the ALJ did not consider were her statements that she cooked but

10

> what used to take 30 minutes now takes and hour (R. 47), bathing and showering wears her out and she has to sit down afterwards, did very little yardwork, used to garden (R. 48), did very little shopping, very rarely socialized (R. 49), only occasionally went to church, and went out to eat only once a week (R. 50). As a result, the ALJ should have considered not just the type of activities Ms. Mitchell could perform, but also the extent to which she could perform them in assessing her credibility.

Id. "An ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (citing Brown, 873 F.3d at 263 (4th Cir. 2017)). Here, the ALJ acknowledged the extent of the cited activities Plaintiff references by stating, "*she alleged difficulty functioning and performing* everyday activities, although she admitted capability for cooking, bathing, showing, doing laundry, changing bed sheets, dusting, mopping, and vacuuming." (Tr. 18) (emphasis added). Thus, the ALJ considered Plaintiff's testimony to the extent at which she could perform the cited activities.

Lastly, Plaintiff claims the ALJ erred in the RFC formulation because "the vocational expert said the Plaintiff would not be able to perform her past relevant light skilled work based upon the ALJ's first hypothetical, yet the ALJ found she could perform medium work with her limitations." (Tr. 11). Plaintiff's argument suggests that in order to perform medium work, Plaintiff must be able to perform all occupations that are categorized as light work. However, there are other functions to consider other than physical ability in the function-by-function analysis, specifically "mental abilities" and "other work-related abilities affected by impairments." 20 C.F.R. § 416.945(b)-(d)). Perhaps an individual who is physically able to perform medium work cannot perform certain light work occupations because these occupations require mental ability that does not comport with the individual. Thus, the ALJ could reasonably find Plaintiff

11

was able to perform medium work despite a vocational expert finding Plaintiff could not perform their previous light work occupation.

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment, (Doc. No. 10), is DENIED; the Commissioner's Motion for Summary Judgment, (Doc. No. 12), is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: June 20, 2019

Frank D. Whitney
Chief United States District Judge